ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter is before the court on the motion for summary judgment of Plaintiffs (taxpayers) and the Response to Motion for Summary Judgment on Affirmative Defense of Defendant Department of Revenue (department). On prior cross-motions, the court concluded that it would review on ade novo basis only the decision of the magistrate to dismiss the case, but would take all relevant evidence as to the factual situation relating to that decision and not limit the record to the facts known to the magistrate when the decision was made to dismiss the case.Spears v. Dept. of Rev., ___OTR___ (Apr 20, 2010) (slip op at 2-3).[1] *Page 2 
 II. FACTS
As shown in the record made in this division, taxpayers, through their counsel W. Scott Phinney (Phinney), filed a complaint in the Magistrate Division of the court against Defendant Marion County Assessor (the county) on August 6, 2007. (Stip Facts at 1.) Through the rest of 2007 and much of 2008, the parties in the litigation worked on pleadings and a stipulation of facts. As to the pace of the case and failure to submit timely status reports, the magistrate assigned to the case expressed concern to both parties.
By October 6, 2008, the parties had agreed to proceed with cross-motions for summary judgment and had agreed on a briefing schedule. The schedule contemplated simultaneous briefing on the cross-motions with initial briefs due January 6, 2009, and reply briefs due February 9, 2009. (Stip Facts at 5.)
On January 6, 2009, Phinney requested a 10 day extension to file his opening brief until January 16, 2009. Phinney's request stated in relevant part:
 "I am writing because I apparently wrote down the wrong dates for the submission of the brief in this matter. I had it down for January 9, 2009. In an email from Mr. Norris which I finally read today he indicated that the date was January 6, 2009. At this point, we have not finalized the stipulated facts. I am asking for a 10 day extension until January 16, 1009[sic]. The weather set me back several days and I have another brief that is due to the court tomorrow. I contacted Mr. Norris' office today but he was out for the afternoon."
(Stip Facts at 5.) The county's summary judgment motion was filed January 8, 2009. Taxpayers do not question the timeliness of this filing. (Id.) *Page 3 
On January 16, 2009, Phinney sent a letter to the court requesting another two business days to file the motion and that the county had no objection. That letter states in relevant part:
 "I am again writing to request an extension for the filing of my motion. Due to personal issues, I am requesting an additional two business days to submit my motion. I spoke to Mr. Norris today and he has no objection to this request."
(Id. at 5-6.) On January 22, 2009, Phinney sent another letter to the court. That letter stated in relevant part:
 "I apologize for the delay in submitting my motion in this matter. I have been ill and my son's fiancée's mother had cancer surgery on Wednesday. I will get the motion to you and Mr. Norris as soon as possible. I understand that Mr. Norris is on medical leave because his wife is having surgery."
(Id. at 6.) On January 28, 2009, Presiding Magistrate Tanner, knowing only the facts stated above, wrote a letter to Phinney. That letter stated in relevant part:
 "If your motion is not submitted to the court by close of business on February 6, 2009, the above entitled matter will be dismissed for lack of prosecution."
(Id.) On February 3, 2009, Phinney was seen by his primary care physician and diagnosed with influenza and given Tamiflu. He presented with a fever and a headache. Phinney complained of right leg pain and the doctor checked his leg, and found tenderness, but no swelling. (Id.)
On February 5, 2009, Phinney went to his primary care physician complaining about pain, redness and swelling in his leg that lasted four days. His blood tests were abnormal. His physician sent him to the hospital for additional testing. A Venus Doppler test was performed at St. Vincent's Medical Center on February 5, 2009 (although the doctor drafted the note interpreting it on February 6, 2009). Phinney was diagnosed with cellulitis and given Keflex and Cipro antibiotics on an outpatient basis. (Id. at 6-7.) *Page 4 
On February 5, 2009, Phinney's wife contacted the court and told the court that Phinney had been ill for three days, had gone to the doctor and was on the way to the hospital for further testing and that he would have to be at home with his leg elevated and be unable to work on the brief. Oregon Judicial Information Network (OJIN) event entry 55 indicates that the clerk made an entry that reads "3/02/09 RN." (Id. at 7.) Phinney's wife interpreted statements of court staff as indicating there would not be consequences arising from a failure to file as the court had ordered. (Aff of St. Clair at 2.) The court staff person who took the call states that she did not state or infer that any change to required timelines would be made. (Aff of Graffenberger at 1.)
On February 6, 2009, Phinney returned to his primary care physician and had additional medical testing. (Stip Facts at 7.)
On February 8, 2009, Phinney went to the emergency room and was admitted to the hospital. He remained in the hospital until February 13, 2009. At that point, Phinney had been on antibiotics for two days without any relief in swelling, pain or redness to his leg. In addition, he continued to have a low grade fever and upper respiratory symptoms. He was admitted to the hospital with the diagnosis of "right lower extremity cellulitis, which has failed outpatient treatment." He was given intravenous antibiotics and intravenous Tylenol as well as Oxycodone for pain. The primary reason he was hospitalized was for cellulitis in his leg. He was "slow to improve" and given Vancomycin and Bactrim antibiotics as well as pain medicines. While he was in the hospital, he had periodic fevers, cough and shortness of breath despite improvement of his cellulitis. As a result, he was diagnosed with a viral upper respiratory infection. He remained in the hospital from February 8, 2009, through February 13, 2009. (Id. at 7-8.)
On February 18, 2009, Phinney returned to his primary care physician. Although the doctor's notes are nearly illegible, they reflect Phinney's statement in his declaration that he was diagnosed with "acute bronchitis" at that time. (Id. at 8.) *Page 5 
On February 27, 2009, Presiding Magistrate Tanner signed a Decision dismissing taxpayers' case for want of prosecution. The Decision indicates that on February 5, 2009, Phinney's wife "called the court stating that her husband had been ill for three days and after further medical testing would need to be home resting and would not be able to work on brief. Plaintiffs' representative did not contact the court." (Id. at 8-9.)
Phinney's affidavit states he was physically unable to work between February 2, 2009, and March 2, 2009. (Aff of Phinney at 1-2.) At no time between February 5, 2009, and the decision of dismissal on February 27, 2009, did Phinney or anyone on his behalf contact the court.
 III. ISSUE
Should taxpayers' case be dismissed for failure to prosecute or disobedience of an order or direction of the magistrate?
 IV. ANALYSIS
Taxpayers argue that the case of Phan v. Morrow,185 Or App 628, 60 P3d 1111 (2003) controls here and prevents the use of dismissal to enforce the filing schedule set by the magistrate. That position is not well taken. The conclusion of the court inPhan was premised on there being no "statutory or rule-based authority" providing for dismissal. Phan, 185 Or App at 633. That is not the case here as Tax Court Rule-Magistrate Division (TCR-MD) 20 is a rule promulgated pursuant to ORS 305.501(3).[2]
Taxpayers also argue that a dismissal of taxpayers' case pursuant to TCR-MD 20 would constitute a violation of the due process rights of taxpayers. This court again disagrees. The *Page 6 
fundamental elements of due process are notice and a right to be heard.Mathews v. Eldridge,424 US 319, 348, 96 S Ct 893, 47 L Ed 2d 18 (1976). As to the first of such elements, there is no question that taxpayers, through counsel, were clearly notified that failure to submit the motion that taxpayers had agreed to submit would lead to dismissal. Not only were taxpayers charged with knowledge of the provisions of TCR-MD 20 on this subject, the magistrate was explicit in a written description of the consequences.
It seems obvious from the facts that occurred prior to the decision of dismissal that the magistrate concluded that taxpayers' counsel was simply unwilling to comply with the filing schedule to which he had agreed, but with which, for various reasons, he had repeatedly failed to comply. This conclusion might well have been coupled with a concern that such failure or delay prejudiced the other party to the case — a party that had complied with the agreed upon simultaneous briefing schedule.
The court now has the benefit of a more complete record regarding the illness that disrupted the ability of that counsel to meet his prior commitments regarding filing of a motion and supporting papers. This record reveals that counsel was not unwilling to comply with the directions given by the court. Rather, he was unable to do so. This more complete record also reveals that taxpayers' counsel or those acting on his behalf could have made the situation much more clear to the court, especially in light of the numerous prior extensions and the absolute nature of the written notice regarding compliance that had been given.
The court is of the view that the action of the magistrate was completely understandable and, as mentioned above, had been preceded by adequate notice for due process purposes. There was, however, no opportunity for taxpayers to be heard on the matter of dismissal. That was not a failing of the magistrate. It is, if anything, a weakness in the provisions of TCR-MD 20. *Page 7 
That weakness in TC-MD 20, if it be such, is however corrected by the availability of a de novo hearing on the issue in this division.
In a case such as this one, the court exercises this de novo
review in the same fashion as though the rule provided, as others in Oregon do, that dismissal is done only after a "show cause" hearing.[3] The de novo hearing in the Regular Division makes the dismissal by the magistrate in effect the notice to show cause why that action should not be taken.[4] The right to be heard in the Regular Division as to the dismissal satisfies the second prong of the due process analysis, to the extent that those requirements apply — a matter not decided here.[5]
Upon de novo review of this matter, and with the benefit of information not available to the magistrate, the court concludes that there was good cause for the failure of taxpayers' counsel to submit the documents he had agreed to submit within the already extended time frame. The medical problems of counsel were serious and emergent. Those problems interrupted the ability of counsel and those assisting him to address his caseload requirements.
That said, the court considers it appropriate to admonish those who appear in this court to avoid the problem that arose here.[6] First, letters stating deadlines with dismissal consequences must be taken seriously. Second, written communications with detailed explanations are *Page 8 
preferable to telephone calls. Third, a motion for leave to extend time frames coupled with detailed reasons should be submitted whenever possible.
Finally, those with business before the court are well advised to keep the court apprised of developments that may disrupt — or as here, have already disrupted — scheduling. The record here indicates that counsel never sought to contact the magistrate after the missed due date, even after the medical emergency appears to have passed, in order to explain the apparent failure to comply with ordered time limits. The final action of dismissal was not taken until 21 days after the deadline for submission had come and gone. This may well have created the impression that counsel was simply not going to submit material.
 V. CONCLUSION
On de novo review of this matter, the court concludes that taxpayers have shown good cause for their failure to comply with the order of the magistrate. The case will be continued in the Regular Division for decision on the merits. Now, therefore,
IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted; and
IT IS FURTHER ORDERED that this case is continued for further proceedings.
Dated this ___ day of December, 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON DECEMBER 7, 2010, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] Taxpayers argued in their motion that even if a case is dismissed by a magistrate for clear or conceded failure to prosecute, the plaintiff may obtain a full de novo trial in the Regular Division of this court, not limited to the propriety of the dismissal by a magistrate. The decisions of this court are to the contrary. SeeNorpac Foods, Inc. v. Dept. of Rev., 15 OTR 331 (2001);Freitag v. Dept. of Rev., 19 OTR 144 (2006). The Oregon Supreme Court has, in addition, recognized that a taxpayer is not free to evade the legislatively prescribed scheme for review. See Wynne v. Dept. ofRev., 342 Or 515, 521, 156 P3d 64 (2007). However, given the disposition of this motion, it is not necessary to address taxpayers' argument in this regard.
[2] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition. TCR-MD 20 provides that "[t]he court may enforce any decision, order, judgment, or other statement directing a party to perform a specific act by imposing sanctions on the party refusing or neglecting to comply. Sanctions may include, but are not limited to, dismissal of the case, and may include sanctions for contempt as authorized by statute."
[3] The court notes that on the matter of dismissal or other sanctions, rules applicable to other courts often provide that dismissal only occurs after a show cause or other hearing. See ORCP 54 B(3); UTCR 1.090(2).
[4] Once at the Regular Division, TCR 54 B(3) applies the same rule as ORCP 54 B(3).
[5] Taxpayers also argue that the court must use the contempt sanction rather than dismissal. For this proposition taxpayers cite ORS 1.010, which indicates that the Tax Court, like other courts,may sanction through contempt. Taxpayers' position is not well taken. ORS 1.010 authorizes contempt as a sanction. It does not in any way require that it be used as a sanction instead of dismissal. The legislature created the Magistrate Division of this court to provide prompt and accessible resolution of the initial hearings on tax disputes. Those goals would be seriously frustrated if the court could not insist on compliance with orders except by first exhausting the potentially cumbersome processes associated with the contempt sanction.
[6] An excerpt from the deposition of Phinney indicates he did not think the due date for his motion was particularly serious. It is hard for the court to understand this testimony given the serious nature of the court's letter sent out on January 28, 2009. (Stip Facts at 10, ¶ 33; Ex 36.) *Page 1